### Richmond

## CITY OF RICHMOND V. WILLIAMS AND OTHERS.

#### March 13, 1913.

1. EMINENT DOMAIN—*Damages—Cost of Removal of Personal Property.*—Under the Constitution of 1902, which requires compensation to be made for property taken or *damaged* for a public use, and under the statute passed in pursuance thereof requiring the commissioners to ascertain what will be a just compensation for the land or "other property" proposed to be condemned, it is proper to instruct the commissioners to consider the expense of moving a stock of lumber stored by a tenant upon the land taken and also the expense of removing a fence upon said land. The words "other property" embrace personal property.

2. NEW TRIAL—*After-Discovered Evidence.*—Evidence discovered before judgment is entered in a condemnation proceeding is not such after-discovered evidence as will entitle a party to a new trial, or a reassessment of damages.

3. EMINENT DOMAIN—*Damages—Inadequacy—Finding of Commissioners—Weight.*—The finding of capable and upright commissioners in condemnation proceedings, who have viewed the land and heard all of the testimony of the witnesses, will not be set aside on the ground of the inadequacy of the damages allowed except in a very clear case. It must appear that they proceeded upon erroneous principles, or were influenced by passion or prejudice.

Error to a judgment of the Hustings Court of the city of Richmond, Part II, in a condemnation proceeding. To a judgment fixing the amount of damages petitioner assigns error.

*Affirmed.*

The opinion states the case.

*H. R. Pollard* and *George Wayne Anderson,* for the plaintiff in error.

*A. W. Patterson,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

The city of Richmond desiring to widen Seventh street between McDonough and Semmes streets, in Washington ward, filed its petition in the Hustings Court of the city of Richmond, Part II, making T. C. Williams, the owner, party defendant, and asking for the appointment of commissioners to ascertain what would be a just compensation to him for the land proposed to be condemned for its uses. Such proceedings were had that the Alleghany Box Company, a tenant of T. C. Williams, Jr., of the premises in question, was also made a party defendant. Commissioners were appointed by the court, who after receiving instructions went upon the premises, examined witnesses and reported that there should be paid to T. C. Williams, Jr., the sum of $1,600, to the Alleghany Box Company, the lessee, the sum of $100 for the land and other property taken from them; that there would be no damage to the adjacent property of the tenant or owner, or that of any other person, beyond the peculiar benefits that would accrue to such other property from the construction and maintenance of such work; and, finally, the report allows to the Alleghany Box Company the sum of $650 for removing the lumber piled upon the premises and for replacing its fences. To this report the city of Richmond, T. C. Williams, Jr., and the Alleghany Box Company excepted, and the cause coming on to be heard upon the petition, the answer of the defendants, the report of the commissioners, the exceptions thereto, and the depositions of witnesses, the court overruled all of the exceptions and confirmed the report; and upon the petition of the city of Richmond a writ of error was awarded.

The only objection taken to the award by the city of

Richmond is to the allowance of $650 to the Alleghany Box Company for the removal of the lumber from the land condemned and the foundation timbers on which the lumber was piled, and for removing and replacing its fences.

In section 41 of Lewis on Eminent Domain, it is said that "Where by taking a part of a tract additional fencing' will be rendered necessary in order to the reasonable use and enjoyment of the remainder, * * * then the burden of constructing and maintaining such fence in so far as it depreciates the value of the land, is a proper element to be considered in estimating the damages."

It would seem that the only depreciation that would be caused to the value of the land would be by reason of the burden imposed upon the owner to construct an additional fence, as in the case before us. There was a fence along the Seventh street border of the land condemned, and the taking of twenty feet and appropriating it to the uses of a public street rendered necessary the construction of a new fence. The whole of the square of which the twenty feet condemned is a part belonged to T. C. Williams, Jr., by whom it had been leased to the Alleghany Box Company, by which it had been used for the storage of lumber which it became necessary to remove. The cost of this removal and the construction of the fence was estimated by the commissioners at $650. The contention of the plaintiff in error is not as to the amount of the award in this respect, but that anything was allowed for the removal of the lumber.

The court, in No. 6 of its instructions, told the commission that it might consider "the expense of moving the fence and stock of lumber upon the land at the time of the commencement of the proceedings, which may be occasioned by the taking of the land, and not removed in the regular course of business"; the contention of the plaintiff in error being that no allowance to the tenant for the moving of the lumber could be made.

Until the adoption of our Constitution in 1902 the owner of land taken in condemnation proceedings was allowed compensation only for the land actually taken, but by the Constitution now in force the legislature is forbidden to enact any law "whereby property shall be taken or damaged for public uses without just compensation," and clause 5 of section 1105-f. of the Code, in obedience to that provision of the Constitution, provides that in condemnation proceedings commissioners must be appointed "to ascertain what will be a just compensation for the land or other property, or for the interest or estate therein, proposed to be condemned for its uses, and to award the damages, if any, resulting to the adjacent or other property of the owner, or to the property of any other person, beyond the peculiar benefits that will accrue to such properties, respectively, from the construction and operation of the company's works,  *  *"

In *Hunter* v. *Chesapeake and Ohio Railway Company,* 107 Va. 158, 59 S. E. 415, 17 L. R. A. (N. S.) 124, it is said that "the just compensation contemplated is the market value of the property in view of any purpose to which it is adapted. The full and perfect equivalent for the property taken is what the law contemplates as the market value thereof."

In the case just cited the commissioners to ascertain damages were instructed that they were to consider the expense of moving the large stock of goods carried by Mr. Hunter, and this court, discussing what was the true rule in ascertaining the damages to Hunter when his property was taken, in answer to the contention that Hunter was entitled to damages for the interruption of his business conducted upon the property, after considering certain cases from other States, said: "Those cases are authority for the proposition that where property is taken for a public use, requiring a removal of a business conducted on

it theretofore, the owner, apart from the value of his property taken, the expenses incurred in moving, etc., is entitled to recover for loss of profits from the suspension of business while moving; but this rule of law finds no sanction in our own decisions, nor is it regarded as the established rule by the weight of authority in this country." It is apparent, we think, that the court approved an allowance for expenses incurred in moving, etc., but denied the right to recover damages for loss of profits from the suspension of business while moving, and it was that loss of profits from the suspension of business while moving which this court thought found no sanction in our own decisions and was not regarded as established by the weight of authority in other States. So that *Hunter* v. *Ches. & Ohio Ry. Co.*, if not an express authority for an allowance made for expenses incurred in moving personal property, it is not an authority to the contrary.

But since that case arose the Constitution has been changed, as we have already seen, and we are now, we believe, for the first time called upon to consider the precise question now presented in the light of the Constitution and laws as they now exist.

Our statute requires the commissioners to ascertain what will be a just compensation for the land or other property proposed to be condemned. In clause 10 of section 5 of the Code, it is provided that the word "land," or "lands," and the words "real estate" shall be construed to include lands, tenements, and hereditaments, and all rights thereto and interests therein, other than a chattel interest. The words "other property," therefore, which are added, must apply to something other than land, or they are wholly superfluous. If, therefore, it becomes necessary to take land and other property, which must of necessity embrace property other than land, we can only satisfy the language of the statute by construing the language used as embracing personal property. So construed, just com-

pensation must be awarded for the land or other property taken, and damages must be awarded resulting to adjacent or other property of the owner, or to the property of any other person, beyond the peculiar benefits accruing to such properties, respectively; and the just compensation required to be made must, under the law as it now stands, be a full equivalent for the damages to the land or other property injured, as well as for that which is taken.

Now, in this case, upon the land which was taken there was stored a great quantity of lumber. In appropriating the land to the uses of the city it became necessary to remove the lumber, and we think it plain that in compelling its owner to remove it, a burden was imposed which diminished the value of the lumber and damaged its owner.

We are of opinion, therefore, that there was no error in the instruction given to the commissioners to consider the expense of moving the stock of lumber upon the strip of land condemned.

After the court had entered judgment upon the report of the commissioners, the city of Richmond asked to have the judgment set aside with respect to so much of the award as allowed compensation for the removal of the lumber, upon the ground of after-discovered evidence to the effect that a considerable time before the entry of the judgment the whole of the lumber had been removed to a point in the city of Richmond to which it would have been necessary to remove it in the ordinary course of business if condemnation proceedings had not been instituted, so that no damage had been sustained and no injury inflicted by reason of the proceedings instituted by the city of Richmond.

The land condemned upon which the lumber was stored lay upon one of the principal streets in that part of the city of Richmond formerly known as Manchester, and we are of opinion that the movement of the lumber should have been known to the city of Richmond before the judg-

ment was entered of which it now complains. Indeed, the affidavit upon which the motion is founded does not deny that the evidence upon which it now relies was known to the city of Richmond, or its counsel, before the judgment complained of was rendered, for it is stated in the affidavit upon which the motion is based that the evidence was only discovered after the hearing of the exceptions to the report of the commissioners filed by the city, and its motion to sustain the same, and after the motion of the city to strike from the report as surplusage the item of $650 ascertained and awarded as damages to the Alleghany Box Company had been fully argued and submitted to the court.

This point seems to be controlled in principle by the case of *Jones* v. *Town of Martinsville,* 111 Va. 103, 68 S. E. 265, where it is held that it is too late after verdict to make objection to the alleged misconduct of a juror which was known to the party objecting before the jury had retired; and this court approved the language of Judge Snyder in *Fletcher* v. *Hale,* 22 W. Va. 44, as follows: "The rule proceeds upon the ground that a party ought not to be permitted, after discovering an act of misconduct which would entitle him to claim a new trial, to remain silent and take his chances of a favorable verdict, and afterwards, if the verdict is against him, bring it forward as a ground for a new trial. A party cannot be permitted to lie by, after having knowledge of a defect of this character, and speculate upon the result, and to complain only when the verdict becomes unsatisfactory to him."

*Jones* v. *Town of Martinsville* was a case where a motion was made to set aside the verdict upon the ground of the misconduct of a juror, and the motion was refused because the misconduct relied on was known before the verdict was rendered; but the same principle applies wherever the evidence relied upon to produce a different verdict was known

to the party interested before the verdict was rendered. See *Allen* v. *Commonwealth, post* 826, 77 S. E. 66.

We are of opinion that there was no error in the judgment of the hustings court to the prejudice of the city of Richmond.

The defendant in error, T. C. Williams, Jr., also asks that the judgment be set aside for error in the instructions given to the commissioners, and inadequacy of the damages awarded.

The instructions given by the court, we think, cover every phase of the case, and in obedience to them the commissioners, when they went upon the land to view it, and heard the testimony of the witnesses, were authorized to consider every use to which the land could be applied, or for which it was adapted, and every capability for which it could be used and enjoyed.

Without entering into a discussion of the particular cases, we refer to sections 706 and 707 of Lewis on Eminent Domain, which fully sustain the instructions given.

As was said by this court in *Railroad Company* v. *Chamblin,* 100 Va. 401, 41 S. E. 750, cited with approval in *Barnes* v. *Tidewater Ry. Co.,* 107 Va. 263, 58 S. E. 594, "The best that can be done is to appoint capable and upright commissioners to go upon the land, examine it, hear testimony, and consider all the facts and circumstances surrounding the situation, and likely to enter into the value of the subject, and thus ascertain what is the value of the land to be taken, and the effect of such taking upon the residue of the tract."

As no objection was made to the commissioners, we must assume that they were capable and upright; and as no exceptions were taken to the testimony, it must be assumed that all the evidence accessible to the defendants in error was produced and admitted. And this brings us to the consideration of the inadequacy of the damages reported.

In *Cranford Paving Company* v. *Baum,* 97 Va. 501, 24 S. E. 906, Judge Riely, speaking for the court, said: "When it becomes necessary to ascertain what is just compensation for land taken for a public use, as in the present case, the statute directs that the court shall appoint five disinterested freeholders as commissioners to perform this duty, and requires that in its performance they shall themselves view the land so taken. The law lays great stress upon the matter of the view, and justly attaches great weight to the report of the commissioners. They are greatly aided, as they were in this case, by the evidence of their own senses. They have the advantage of seeing the land itself which is taken, and judging as to its value, and of determining the effect of the opening of the road upon the residue of the tract. They have, as they also had here, after having their attention specially drawn to the element of damage relied upon, the opportunity to apply the evidence produced before them to the subject of the controversy, and to determine the weight to be given to its several parts. We are without the benefit of their opportunities, and of what they saw and were the judges, and it should be a very clear case, indeed, of inadequate compensation, to justify the court in disturbing their sworn, deliberate and disinterested judgment as disclosed in their report."

In *Hunter* v. *C. & O. Ry. Co., supra,* the court said: "The finding of the commissioners in condemnation proceedings is entitled to great weight, and is not to be disturbed unless shown to be erroneous by clear proof. Great weight is attached to the view. The commissioners see the land and can judge of its value themselves, and are also thereby better enabled to apply the evidence produced before them to the subject of controversy, and to determine the weight to be given to its several parts."

In *Barnes* v. *Tidewater Ry. Co., supra,* the court said:

"Where commissioners in condemnation proceedings have heard the evidence of the witnesses offered, and have also viewed the premises, their findings as to amount of the damages which land-owners will sustain are entitled to great weight, and will not be disturbed by the courts except upon clear evidence that their estimates were excessive or inadequate. For error of judgment in arriving at the amount of damages, if any, there can be no correction, especially where the evidence is conflicting, unless the damages allowed are so excessive or inadequate as to show prejudice or corruption. The commissioners are not bound by the opinions of experts or the apparent weight of the evidence, but may form their own conclusions." To the same effect see *Shoemaker* v. *U. S.,* 147 U. S. 282, 13 Sup. Ct. 361, 37 L. Ed. 170.

In Lewis on Eminent Domain, section 776, after citing a vast array of authorities, the law is stated as follows: "The report or verdict may be set aside on the ground that the damages awarded are too much or too little. In setting aside a report on the question of damages, the court will be governed by the same principles as obtain in the case of the verdicts of juries in common law suits. Where there is evidence to sustain the verdict and the testimony is conflicting, the court ordinarily will not interfere on this ground alone; and especially is this the case where the commissioners or jury have viewed the premises. To justify an interference on the ground that the damages are inadequate or excessive the case must be a very clear one, and it must appear that the tribunal has proceeded upon erroneous principles, or has been influence by passion or prejudice, or has disregarded the evidence in the case."

Upon the whole case, we are of opinion that there was no error to the prejudice of either the plaintiff or the defendant in error, and the judgment of the hustings court is affirmed.

*Affirmed.*