## Richmond

STATE HIGHWAY COMMISSIONER OF VIRGINIA v. WISE A. SKILLMAN
AND THELMA T. SKILLMAN.

April 26, 1965.

Record No. 5930.

Present, All the Justices.

*M. Ray Johnston, Assistant Attorney General* (*Robert Y. Button, Attorney General; Paul D. Stotts, Assistant Attorney General,* on brief), for the appellant.

*G. Duane Holloway,* for the appellees.

EGGLESTON, C. J., delivered the opinion of the court.

On May 31, 1963, the State Highway Commissioner filed in the court below a petition for the condemnation of a strip of land, containing approximately 1.8 acres, owned by Wise A. Skillman and Thelma T. Skillman, in York county, and deemed necessary for the construction of Interstate Highway 64. Commissioners were appointed who heard the evidence in the presence of the court and viewed the property. They filed a report awarding $40,850 for the value of the land and certain buildings thereon taken, and $24,150 for damages to the residue, or a total of $65,000.

The Highway Commissioner excepted to the report on the grounds, among others, that the award was excessive and that the lower court erred in admitting evidence of a sale of certain property by the Skillmans in 1958. The court overruled these exceptions and entered judgment on the award. The Commissioner has appealed, making the same contentions which he did in his exceptions to the report.

At the time of the institution of the proceedings the Skillmans owned a 10-acre parcel of land fronting 740 feet along the northern side of Route 168, a few miles east of Williamsburg. On the property were a one-story brick dwelling occupied by the Skillmans, and two two-story frame dwellings which they rented. In the proceedings the Commonwealth acquired a strip of the Skillman land for the purpose of constructing a connecting road leading from Interstate Highway 64, then under construction north of the Skillman property, to the northern side of Route 168. The 1.8 acres of land taken front 580 feet on the northern side of Route 168 and include that portion on which the frame dwellings were located. The connecting road runs through the Skillman property, separating the residence and appurtenant land from Route 168. It also separates the residence and appurtenant land from a parcel of 0.40 of an acre left lying along the north side of Route 168.

While a service road was provided to permit access from Route 168 to the western part of the Skillmans' remaining property, it will be necessary that they construct a private road, approximately 700 feet long, leading from the residence to the service road. They must also sink a well to replace the one located on the property taken.

The only expert witness for the Highway Commissioner as to the value of the land taken and damages to the residue was Fred S. McCall. He testified that he resided in Chesterfield county and had been appraising property for the State Highway Department since

1956; that in the last three years he had appraised three tracts of land in York county, and that, in his opinion, property in the vicinity of the Skillman property should be valued on an acreage basis. He fixed the value of the 1.8 acres taken at $5,400 and that of the two frame dwellings at $12,420, or a total of $17,820. He fixed the damages to the residue of the property at $10,875, consisting of $2,375 damage to the 0.40-acre parcel, $6,600 to the other remaining land, $1,500 for the construction of the private road, and $400 for the cost of a well which the Skillmans must sink. In his opinion, the total value of the land and buildings taken and damages to the residue amounted to $28,695.

The closest comparable sale of which this witness was aware was one by Pleasant View Corporation, lying just west of the Skillman property, which had a 1,000-foot frontage on Route 168 with a depth of 500 feet. In November, 1961 this property sold for $50,000, or approximately $4,800 an acre. McCall valued the Skillman property at $3,000 an acre.

The testimony on behalf of the property owners as to the value of the property taken and damages to the residue came from R. Owen Latham and James C. Moore. Latham testified that he had been selling property in York county since 1958, and during the last three years had appraised three or four parcels in the vicinity of the Skillman property. He said that the property being zoned for industrial purposes should be valued at a per-foot frontage on Route 168 and not on an acreage basis. On a frontage basis he valued the 1.8 acres of land taken at $41,300 and the two frame dwellings at $15,600, making a total of $56,900 for the value of the land and buildings taken. He fixed the damages to the residue, including the cost of constructing the access road and sinking the well, at $21,050, or a total of $77,950.

Moore testified that he had been a real-estate broker since 1947 and had appraised numerous parcels of land in York county; that the Skillman property should be valued on a front-foot basis along Route 168 rather than on an acreage basis. He placed the value of the land and frame dwellings taken at $59,000 and damages to the residue, including the cost of constructing the road and sinking the well at $34,300, or a total of $93,300.

We have repeatedly said that in eminent domain proceedings "the report of the commissioners is entitled to great weight, is *prima facie* correct, and must be confirmed unless 'good cause be shown against it.' Where there is a conflict of evidence before the commissioners

neither the trial court nor this court can set aside the award unless it be shown that the commissioners proceeded upon erroneous principles, or unless the amount allowed is so grossly inadequate or excessive as to show prejudice or corruption on their part. This is so because the commissioners may base their finding largely upon facts obtained by their own view of the property which do not appear in the record." *Kornegay* v. *City of Richmond*, 185 Va. 1013, 1024, 41 S. E. 2d 45, 50. See also, *Virginia Electric & Power Co.* v. *Pickett*, 197 Va. 269, 275, 89 S. E. 2d 76, 80; *Brown* v. *May*, 202 Va. 300, 307, 117 S. E. 2d 101, 106-7; 6 Mich. Jur., Eminent Domain, § 78, p. 766.

In the present case there is nothing to show that in arriving at their award the commissioners proceeded upon erroneous principles. No exceptions were taken to the instructions which were in the usual and approved form. While the award of $65,000 for the value of the land and the buildings taken and damages to the residue was considerably in excess of the value of $28,695 fixed by the witness for the Commonwealth, it is much less than the value of $77,950 to $93,300 fixed by the respective witnesses for the property owners. Moreover, the commissioners viewed the property. Hence we cannot say that their award is grossly excessive and not supported by the evidence.

■ The main contention of the Highway Commissioner is that the lower court erred in admitting in evidence, as relevant to the value of the property taken, testimony that in April, 1958 the Skillmans had sold to the Chesapeake & Potomac Telephone Company a small parcel of land on the north side of Route 168, immediately adjoining on the west the tract of land taken in the present proceedings.

During the testimony of McCall, the witness for the Commonwealth, counsel for the Commissioner suggested that he had evidence of sales of land along Route 168 "ranging from 1958 through 1961," and inquired whether they were relevant. The court stated that evidence of sales in 1958 were not relevant for the reason that the value of property in York county had greatly increased since that year and that evidence of a sale at that time would be "unfair to the landowner." Following that ruling, counsel for the Commissioner pursued the matter no further and offered no evidence of comparable sales during that year.

Later Skillman testified that he had sold to the Chesapeake & Potomac Telephone Company, in April, 1958, a parcel of land front-

ing 50 feet on Route 168 for $3,750, or $75 per front foot. Counsel for the Commissioner objected to such evidence on the ground that it was not admissible under the court's prior ruling, and for the further reason that it was a sale for a special purpose—for the location thereon of a relay station. The lower court overruled such objection.

Thereafter the witness Latham referred to this sale to the Telephone Company as being at the rate of "$72 per front foot." Again counsel for the Commissioner objected to such evidence and requested that the court "direct the commissioners to disregard it." After some discussion the court said: "I ruled that only the landowner could object to the sale as old as five years and the objection of the condemnor was overruled. It now appears that the sale to the telephone company was for a special purpose and does not reflect the usual business demands and [to the commissioners] I will ask you to *disregard the sale in 1958.*" [Emphasis added.]

The Highway Commissioner now argues that this ruling of the lower court was "highly prejudicial to the Commonwealth;" that it was contrary to the court's former ruling as to the admissibility of such evidence; that it permitted the commissioners to consider evidence of a sale which was not comparable; that the court's direction to disregard the evidence of the 1958 sale was not positive and explicit as it should have been; that it was limited to the testimony of Latham; that there was no such direction as to the testimony of Skillman, and that hence the commissioners were left free to consider Skillman's testimony that the property taken from him was worth $75 per front foot.

There are ready answers to this contention. In the first place, if the evidence of the sale to the Telephone Company was improperly admitted the error was cured by the court's direction to the commissioners to "disregard the sale in 1958." Obviously, that direction included the testimony of both Skillman and Latham about the matter. But even if the court's direction to the commissioners was not sufficiently explicit in this respect, it was the duty of counsel for the Commissioner, then and there, to have asked that it be clarified and corrected.

Aside from this, there is nothing in the record to indicate that the commissioners were unduly influenced by the evidence of the 1958 sale of the property to the Telephone Company at $75 per front foot. The 580 feet of land taken from the Skillmans in the present proceeding, valued at $75 per front foot, would amount to $43,500.

The commissioners awarded a total of $40,850 for the value of the land taken and the value of the two frame dwellings thereon. McCall, the witness for the Commonwealth, placed the value of these dwellings at $12,420. If this amount be taken from the commissioners' award of $40,850, it would leave the award for the land at $28,430, or slightly less than $49 per front foot for the 580 feet taken. If Latham's appraisal of $15,600 for the value of the dwellings be taken, then the 580 feet fronting on Route 168 were valued by the commissioners at approximately $43 per front foot.

Thus, the award of the commissioners is nearer in accord with the valuation placed on the property by other witnesses for the property owners than with the evidence of the sale of this small parcel of land to the Telephone Company.

On the whole we find no error in the proceedings and the decree is

*Affirmed.*