# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

CITY OF RICHMOND v. OLD DOMINION IRON AND STEEL CORPORATION.

OLD DOMINION IRON AND STEEL CORPORATION v. CITY OF RICHMOND.

January 17, 1972.

Record Nos. 7565 and 7566.

Present, All the Justices.

*A. J. FitzPatrick, Assistant City Attorney for the City of Richmond,* for appellant in Record No. 7565.

*Robert N. Pollard, Jr. (Fielding L. Williams; Julious P. Smith, Jr.; Williams, Mullen & Christian,* on brief), for appellee in Record No. 7565.

*Julious P. Smith, Jr. (Fielding L. Williams; Robert N. Pollard, Jr.; Williams, Mullen & Christian,* on brief), for appellant in Record No. 7566.

*Wm. S. Cudlipp, Jr. (A. J. FitzPatrick, Assistant City Attorney for the City of Richmond,* on brief), for appellee in Record No. 7566.

COCHRAN, J., delivered the opinion of the court.

These appeals arise from a condemnation proceeding instituted by the City of Richmond against Old Dominion Iron and Steel Corporation. An award to Old Dominion of $375,000 was made in the commissioners' report, to which exceptions were filed by the City and exceptions and a motion to increase the award or grant a new trial were filed by Old Dominion. We granted each an appeal from the order entered March 2, 1970, which overruled all exceptions and Old Dominion's motion and confirmed the report of commissioners.

The City, proceeding under its charter, filed its petition on September 12, 1968, to acquire by condemnation for public park purposes approximately 6.208 acres of land on Belle Isle in the James River, which was owned by Old Dominion, including appurtenant easements and all right, title and interest of Old Dominion in a railway bridge and tracks. The petition stated that the estimated just compensation for the land and interests therein sought to be acquired was $170,000. A certificate evidencing deposit of this sum was attached to the petition. By order entered the same date, the trial court adjudged that fee simple title to the land and other interests was vested in the City.

Old Dominion filed grounds of defense denying the necessity of the acquisition. It also alleged that the sum deposited was inadequate because moving costs and the value of certain improvements placed upon the land prior to adoption of the condemnation ordinance were not included.

A preliminary hearing was held to determine questions of necessity, whether Old Dominion had acted in bad faith in erecting cer-

tain improvements and whether Old Dominion was entitled to introduce evidence before the commissioners of the cost of moving tangible personal property as compensable damages.

The trial court ruled that the evidence established the necessity for condemnation by the City and lack of bad faith on the part of Old Dominion in placing improvements on the land after introduction by City Council of the condemnation ordinance but before its final passage. As to moving costs, the court ruled that the provisions of Va. Code § 33-67.3 (Cum. Supp. 1968), then in effect, applied. Under this statute, no evidence of such costs was admissible before the commissioners but a business concern would be paid the cost of moving its personal property thirty miles or the sum of $3000, whichever was less, when such expense was actually incurred.

Old Dominion has assigned error to the rulings on necessity of acquisition and moving costs. The City has assigned error to the ruling that Old Dominion did not act in bad faith in erecting improvements.

On March 10, 1970, after the award of $375,000 had been approved, the City deposited the additional sum of $205,000, without interest. Old Dominion has assigned error to the court's ruling that the City was not required to pay interest on this excess amount of $205,000 from September 12, 1968 to March 10, 1970.

## I

The City was required to carry the burden of showing, to the satisfaction of the court, the necessity for acquisition of the Old Dominion property. *Stanpark Realty Corp.* v. *Norfolk*, 199 Va. 716, 101 S.E.2d 527 (1958); Va. Code §§ 15.1-15, 15.1-237 (1964). Old Dominion maintains that the City failed to carry this burden in that its evidence showed neither a present need for the property nor a definite plan for its use. We find no merit in this contention.

A. Howe Todd, Director of Planning and Community Development for the City, testified to the development of plans for acquisition of the islands in the James River for recreational use. In early 1965, upon recommendation of the Planning Commission, Richmond City Council approved a new Master Plan of Land Use, Community Facilities and Traffic Ways which provided for recreational development of both banks of the James River, excluding, however, the eastern end of Belle Isle owned by Old Dominion. In 1967, the Planning Commission, after further consideration, study and review

with professional consultants, concluded that it was necessary to revise the Master Plan to include the eastern end of Belle Isle, on which would be located "restaurants and plazas, and places for mass assembly and activity." This revision was approved by City Council.

Jesse A. Reynolds, Director of Recreation and Parks for the City, testified that the entire project "is to be completed in 1973, is our goal." He described the Belle Isle area as the "most important part of this whole concept" for recreational development of the James River. In his view to exclude the Old Dominion land would be to leave "an island on an island" and frustrate the plan for recreational use by the public. According to Reynolds, the James River area, of which he described Belle Isle as the anchor point, was the most suitable land in the City for additional park development.

Elbert Cox, Director of the Virginia State Commission of Outdoor Recreation, who had previously served for 35 years with the National Park Service, expressed his opinion as an expert that it was "very important" for the City to acquire the Old Dominion property. He testified that this view was also the official position of his Commission, which had been asked to participate in the project.

The City's burden was only to show that acquisition of the property was a reasonable necessity, not that it was an absolute necessity. *Stanpark Realty Corp.* v. *Norfolk, supra.* As there was credible evidence from which the trial court could find that reasonable necessity was established, we will not disturb that determination. *See County of Fairfax* v. *Town of Fairfax,* 201 Va. 362, 366, 111 S.E.2d 428, 432 (1959).

## II

■ The City maintains, and the assignments of error upon which it relies are directed solely to this contention, that the record shows as a matter of law that Old Dominion acted in bad faith by placing improvements on its property, after introduction but before final passage of the condemnation ordinance, and that it was therefore not entitled to compensation for such improvements.

The record shows that prior to October 1, 1966, Old Dominion was in serious financial difficulties; that on October 1, 1966, all stock in Old Dominion was acquired by Adamson Company, whose sole stockholders were Donald Gillies and his wife; that thereafter Gillies served as president of both Adamson and Old Dominion; and that under the new management Old Dominion was converted into a profitable business.

As evidence of Old Dominion's bad faith the City relies upon the following events which transpired between October 1, 1966, and August 26, 1968:

In January, 1967, Old Dominion obtained a building permit for a $7550 addition to its facilities and in August, 1967, obtained another permit to build a $16,000 warehouse addition. Old Dominion opposed acquisition of its property for park purposes before the Planning Commission in October, 1967. During the same month the City advised Old Dominion that it intended to acquire the property and that appraisals were being secured as a basis for purchase negotiations. On December 26, 1967, the property was included in the Master Plan by action of City Council.

Old Dominion applied on April 30, 1968, for a building permit to construct a shop and office building for $185,000. This application was held in abeyance by the City, as authorized by its Building Code, because the property was included in the City's Master Plan. Gillies wrote a letter dated June 5, 1968, to members of City Council, urging that the City not acquire Old Dominion's property. On June 17, 1968, Old Dominion again requested issuance of the building permit, asserting that it was then being improperly withheld since neither the Planning Commission nor City Council had acted to acquire the property within the time prescribed by the Building Code. The City advised Old Dominion that a condemnation ordinance was being prepared, but Old Dominion insisted that the permit be issued. On June 24, 1968, Old Dominion was informed by the City that the permit would be issued but that the condemnation ordinance would be introduced at the next meeting of City Council.

The building permit was issued on July 9, 1968, the day after the condemnation ordinance had been introduced by City Council. On July 15, 1968, Old Dominion appeared before the Planning Commission, which was considering the ordinance, objected to the City's acquisition of the Old Dominion property but suggested that further efforts be made to effect a voluntary settlement. On recommendation of the Planning Commission, the public hearing on the condemnation ordinance was postponed from July 22, 1968, until August 26, 1968. The postponement followed a representation by Old Dominion that, if the western end of Belle Isle were developed first, Old Dominion would agree to halt construction during a three or four year period while retaining ownership of its property on the eastern end of the island.

Old Dominion arranged to speed up completion of the erection of the structural steel for its new building prior to final approval of the condemnation ordinance on August 26, 1968.

When a landowner erects a building on land which he knows is to be taken by eminent domain, for the sole purpose of increasing the damages, rather than in the "natural, ordinary and legitimate use of such property", he will not be permitted to recover the value of the building. 4 *Nichols' The Law of Eminent Domain* § 13.14 (rev. 3d ed. 1971). The subjective intent of the landowner may be shown by his conduct and statements. *See Howard* v. *Commonwealth*, 207 Va. 222, 228, 148 S.E.2d 800, 804 (1966).

In the present case the trial court, after hearing the evidence *ore tenus*, held that there was no bad faith on the part of Old Dominion. This finding of fact carries a presumption of correctness. It will not be set aside if there was any credible evidence to support it. *Price* v. *Martin*, 207 Va. 86, 147 S.E.2d 716 (1966).

Gillies testified that the new building was a necessity if Old Dominion was to terminate the disastrous losses which were being incurred when he took over the business. Under the system used by previous management different kinds of metal products were assembled in the same building, which, according to Gillies, made it "impossible to maintain any order in the shop" and caused contamination of stainless steel vessels. The new building enabled management to increase the company's operating efficiency by separating incompatible assembly facilities.

A manufacturer's representative, Robert Trombold, who was familiar with both old and new facilities of Old Dominion, testified that as a result of the construction and modernization program, higher quality production had been achieved and the company had become competitive in the industry.

Gillies' testimony, which the trial court accepted as furnishing a satisfactory explanation for Old Dominion's actions, tends to show that, while he consistently opposed all proposals leading to condemnation of the Old Dominion property, Gillies discussed various compromise possibilities with City representatives. Meanwhile, in order to convert a failing business into a profitable enterprise, he continued to have new buildings erected and caused $354,000 to be invested in new machine tools and $70,000 in new trucks.

This course of conduct does not show bad faith as a matter of law. No one could have predicted with certainty that City Council

would give final approval to the condemnation ordinance. Indeed, there had never been unanimity of agreement on the subject of the Old Dominion property, either in City Council or in the Planning Commission. Gillies might reasonably have believed that he could induce City Council to abandon the proposal to acquire the property.

Moreover, when Old Dominion applied for its building permit on April 30, 1968, the City could have properly denied the permit under its Building Code by taking more prompt action to acquire the property. Having failed to do so, the City can hardly complain that Old Dominion forced the issuance of the permit which had been improperly withheld, and then exercised its rights thereunder.

We find no reversible error in the court's ruling that Old Dominion did not act in bad faith in erecting improvements, and that evidence of the value of improvements which were completed, substantially completed or contracted for under nonterminable contracts on August 26, 1968, was properly admissible.

## III

■ Old Dominion had obtained a firm price of $364,000 for moving its machinery and equipment within a radius of fifteen miles, which Gillies testified would be an acceptable distance. This evidence, under the court's ruling that the provisions of Code § 33-67.3 applied, was excluded from the commissioners. The court also refused Instructions B, C and D, proffered by Old Dominion, which would have permitted the commissioners to consider its moving costs.

Section 18.03 of the City's charter, under which it proceeded, provides for vesting of title in the City upon filing of the condemnation petition and deposit of its estimate of the amount of just compensation. If the City and the landowner cannot agree upon compensation, commissioners are appointed "and all proceedings thereafter shall be had as provided in sections 4366 through 4381 of the Code of Virginia insofar as they are then applicable . . .". These references were to the provisions of the General Condemnation Act (Title 25) rather than the special act applicable in condemnations by the State Highway Commissioner (Title 33). While it is true that Va. Code § 15.1-236 (Cum. Supp. 1971) authorizes cities to use the provisions of Title 33, here the City chose to follow its own charter provisions which incorporated by reference only the applicable sections of Title 25. So the provisions of § 33-67.3, then in effect, do not apply to this condemnation proceeding.

Section 58 of the Virginia Constitution of 1902 provides in part as follows:

". . . The General Assembly . . . shall not enact any law whereby private property shall be taken or damaged for public uses, without just compensation . . . ."

The words "or damaged" appeared in the 1902 Constitution for the first time.

In the great majority of jurisdictions, moving expenses are not allowed in condemnation proceedings, regardless of whether the state constitution contains a "taken or damaged" provision like that found in § 58. *E.g., State* v. *Chun*, 91 Ariz. 317, 372 P.2d 324 (1962); *Ballantyne Co.* v. *City of Omaha*, 173 Neb. 229, 113 N.W.2d 486 (1962); *Utah Road Commission* v. *Hansen*, 14 Utah 2d 305, 383 P.2d 917 (1963); *See* Annot., 69 A.L.R.2d 1453 (1960). In a growing number of states, however, such expenses are compensable under statutory authority. *E.g.,* Neb. Rev. Stat. § 76-710.01 (Cum. Supp. 1967); Wash. Rev. Code Ann. § 8.25.040 (Supp. 1970). *See, Compensation for Moving Expenses of Personal Property in Eminent Domain Proceedings*, 20 *Hast. L. J.* 749, 757-58 (1969).

Old Dominion relies upon *City of Richmond* v. *Williams*, 114 Va. 698, 77 S.E. 492 (1913), as authority for the allowance of moving costs under § 58, contrary to the majority rule. There, the City condemned a strip of land on which the tenant had lumber stored. It was necessary for the lessee to remove the lumber to the residue of the parcel. The commissioners, pursuant to an instruction given by the trial court, considered the expense of moving the stock of lumber and allowed the lessee the sum of $500 as an item of damage.

On appeal, this action of the trial court was affirmed. It was noted that the eminent domain statute, as amended after adoption of the 1902 Constitution "in obedience to . . . [§ 58] of the Constitution", *Id.* at 701, 77 S.E. at 493, provided for just compensation for land "or other property" taken and damages to adjacent "or other property" of the owner, or to the property of any other person, beyond the peculiar benefits to such properties. It was held that the words "other property" used in the statute, referred to personal property and that ". . . the just compensation required to be made must, under the law as it now stands, be a full equivalent for the damages to the land or other property injured, as well as for that which is taken."

The opinion concluded that "in compelling the owner to remove it, a burden was imposed which diminished the value of the lumber and damaged its owner." *Id.* at 703, 77 S.E. at 494.

*Hunter* v. *Chesapeake & Ohio Ry. Co.*, 107 Va. 158, 59 S.E. 415 (1907), cited in *Williams*, arose prior to adoption of the 1902 Constitution when there was no constitutional prohibition against damaging private property. In *Hunter*, an instruction was approved which informed the commissioners that, in determining just compensation, i.e. "fair cost market value . . . (5) They are to consider the expense of moving the large stock of goods carried by Mr. Hunter." 107 Va. at 159, 59 S.E. at 415.

Thus, in *Hunter* cost of moving had been approved as an item to be considered in establishing the fair market value of the land taken, whereas in *Williams*, moving costs were allowed as a separate item of incidental damages to the person whose property interest had been condemned.

The City argues that *Williams* is distinguishable from the present case because it involved a leasehold interest. While this is true, we perceive no reason for not applying the same rule to the owner of fee simple title. Indeed, it has been said that inasmuch as the tenant must anticipate moving at some future time, he is not entitled to as much consideration in the allowance of moving costs as the fee simple owner. *See* 4A *Nichols' The Law of Eminent Domain* § 14.2471[2] (rev. 3d ed. 1971).

The City then asks that, if we cannot distinguish it, we overrule *Williams* as contrary to the overwhelming weight of authority elsewhere and based upon fallacious reasoning. It says that cost of moving is not an element of damage to the personal property moved, but rather an increase in the owner's investment in that property. The City also says that this kind of damage, like loss of profits, loss of good will, and interruption of business, has been held not to be compensable under the vast majority of decisions in other states construing constitutional and statutory provisions similar to ours.

We acknowledge that if we follow *Williams* we will remain in that small group of jurisdictions which allow moving expenses as damages incidental to the taking of property. However, adhering to the principle of *stare decisis*, we reaffirm *Williams*, which we believe correctly allowed moving expenses as an incidental damage to the property right of the lessee who owned the lumber. The constitutional provision for "just compensation" requires that reasonable mov-

ing costs be allowed. Conceivably, land of little market value could have on it a dilapidated factory building containing highly valuable heavy machinery and equipment. The cost of moving the tangible personal property might far exceed the fair market value of the land taken. We conclude that our constitution prohibits a condemning authority from imposing this confiscatory burden on an individual citizen rather than spreading the cost more equitably over the general public. *See Jacksonville Expressway Authority v. Henry G. Du Pree Co.*, 108 So. 2d 289 (Fla. 1958); Spies & McCoid, *Recovery of Consequential Damages in Eminent Domain*, 48 *Va. L. Rev.* 437, 449-51 (1962); Comment, *Eminent Domain Valuations in an Age of Redevelopment: Incidental Losses*, 67 *Yale L. J.* 61, 96-97 (1957).

Moreover, moving costs, unlike loss of profits, loss of good will, interruption of business and other incidental damages, can be definitely established. Thus, the line of cases in which we have consistently disallowed proof of loss of profits as too speculative is inapplicable. *See, e.g., Ryan v. Davis*, 201 Va. 79, 109 S.E.2d 409 (1959); *Hunter v. Chesapeake & Ohio Ry. Co., supra.*

In *Pepco v. Highway Commissioner*, 211 Va. 745, 180 S.E.2d 657 (1971), we disallowed the cost of removing utility lines from locations which the utility companies occupied only under revocable permits, subject to the right of their licensors to require them to relocate at their own expense. We distinguished *Town of Cape Charles v. Ballard Brothers Fish Co.*, 200 Va. 667, 107 S.E.2d 436 (1959), and *Williams* as cases where personal property damaged or required to be removed was in place under a leasehold right. We pointed out that in *Williams*, "as incidental to the damaging of a property right, *i.e.*, the leasehold interest, compensation for the costs of relocating the personal property was constitutionally required." 211 Va. at 750, 180 S.E.2d at 660.

Here, following this interpretation of *Williams*, we hold that compensation for the cost of relocating personal property is required, under the "just compensation" clause of § 58 of the Virginia Constitution of 1902, as damage incidental to the taking of fee simple title to land.

## IV

■ Finally, Old Dominion contends that, under the provisions of Va. Code § 25-46.31(b) (1964), then in effect, it is entitled to in-

terest on the excess of the award over the amount initially deposited by the City. We do not agree. Section 25-46.31(b), as it then read, provided as follows:

"If the petitioner has exercised the right pendente lite to enter into and take possession of the land or other property to be taken or damaged as provided in Section 25-46.8, the owner thereof shall receive . . . interest at the rate of five per centum per annum upon the difference between the amount of the award of just compensation, as finally determined and the amount previously paid into court as required under § 25-46.8 from the time of such entry until payment into court of the sum ascertained in the report of just compensation as provided in § 25-46.24."

This statute contemplates actual entry upon the property as a prerequisite to payment of interest. It is applied to a condemnor who has asked for the right of immediate entry and has established, to the satisfaction of the court, that immediate entry is necessary. It differs in language from Va. Code § 33-70.10 (Cum. Supp. 1968), then in effect, which provided for payment by the State Highway Commissioner of interest on the excess of the award over the deposit from date of deposit under a certificate. Hence *Whitworth* v. *State Highway Comm'r.*, 209 Va. 95, 161 S.E.2d 698 (1968), which construed § 33-70.10, is not applicable.

We construed § 25-46.31(b) in another context in *Colonial Pipeline* v. *Lohman*, 207 Va. 775, 152 S.E.2d 34 (1967). The question was whether interest should begin to run from the date of entry of the order giving the right of immediate entry or from a later date when the conditions precedent required by § 25-46.8 had been fulfilled. In that context we said:

"Code § 25-46.31(b) provides for the payment of interest 'from the time of such entry.' We interpret the phrase 'from the time of such entry' to refer to the time at which entry is authorized under the provisions of § 25-468, namely, 'upon such payment and giving of such bond.' " 207 Va. at 787, 152 S.E.2d at 43.

There, the condemnor had entered into possession. Here, the City has permitted Old Dominion to retain possession of the property rent-free and continue its business operations. Thus the City has

never "exercised the right pendente lite to enter into and take possession of the land" of Old Dominion, as required by § 25-46.31(b) before liability for interest may be imposed.

For the reasons stated the case is reversed and remanded for a new trial solely on the issue of compensation, in which evidence of the cost to Old Dominion of moving its tangible personal property will be admissible before the commissioners.

*Affirmed in part; reversed in part; and remanded.*