# Richmond

## BRISTOL REDEVELOPMENT AND HOUSING AUTHORITY v. FARMBEST, INC.

June 10, 1974.

Record No. 730582.

Present, All the Justices.

*Bradley Roberts*, for appellant.

*Charles B. Flannagan, II (Francis W. Flannagan; Woodward, Miles & Flannagan*, on brief), for appellee.

Poff, J., delivered the opinion of the court.

Upon the petition of Bristol Redevelopment and Housing Authority (Authority), a political subdivision created under Chapter 310, Acts of Assembly (1938) and ordinances of the City of Bristol, to condemn property in the business section of Bristol owned by Farmbest, Inc., (Farmbest), the trial court entered a final decree, confirming the report of the Commissioners which awarded $492,800 for the taking and $43,419 compensation for "the reasonable cost of removing or relocating items of personal property". By appropriate exceptions and assignments of error, Authority challenged the latter award.

The facts are not in dispute. According to a newspaper story published February 4, 1966, the Authority "requested Federal Funds to conduct a survey" of a proposed urban renewal project embracing several city blocks in downtown Bristol. Located within the area under study was property owned by Farmbest, a milk processor and ice cream manufacturer. In August 1967,

Farmbest acquired a new plant in Bristol and in March 1968 began moving its machinery and equipment. By March 1970 it had incurred moving expenses of $31,892 (not including $519 for the cost of removing certain smokestacks).

On May 7, 1970, Bristol city council gave final approval to the urban renewal project, and on December 14, 1970, the federal Department of Housing and Urban Development (HUD) approved the project budget. In August 1972, Farmbest moved its office furniture and other personalty to its new plant at a cost of $4,027.

On September 20, 1972, the Authority filed its petition under the Virginia General Condemnation Act, Code § 25-46.1, *et seq.* (Repl. Vol. 1973). When the petition was filed, there remained on the realty certain machinery, equipment, and parts which the evidence indicated would cost $7,500 to move. The total award of $43,419 for moving expenses included all three cost items. Farmbest's claim of $519 for the cost of removing smokestacks was disallowed because not related to the taking.

In oral argument, the Authority abandoned its challenge to the $7,500 cost item and the $4,027 cost item.[1] What remains in dispute is the $31,892 cost item Farmbest incurred in the two-year interval between March 1968 and March 1970.

The Authority argues that a condemnee's right to recover costs of moving personalty from condemned realty is limited to costs incurred after the condemnation petition is filed. Farmbest argues that a private owner is entitled to recover whatever moving costs he incurs in good faith after receiving notice of the condemnor's proposal to condemn his land.

Code § 25-46.20 (Supp. 1973) provides that commissioners in a general condemnation proceeding "shall fix the value of the property to be taken and the damages, if any, to any other property . . . by reason of the taking". Construing similar language in an earlier statute, we held in *City of Richmond* v. *Williams*, 114 Va. 698, 77 S.E. 492 (1913) that the words "other property" embrace personal property. Reaffirming *Williams*, we held in

---

[1] The $7,500 item was incurred after these proceedings began. Although the $4,027 item was incurred prior to the filing of the petition, it was incurred after the effective date of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1972, Code § 25-235, et seq. (Repl. Vol. 1973), and after the redevelopment project had been approved and funded.

*City of Richmond* v. *Old Dominion Iron*, 212 Va. 611, 620, 186 S.E.2d 30, 37 (1972) that "compensation for the cost of relocating personal property is required, under the 'just compensation' clause of § 58 of the Virginia Constitution of 1902, as damage incidental to the taking of fee simple title to land." [2]

In exercising their statutory authority to "fix the value of the property to be taken", the commissioners are required to determine the fair market value "at the time of the taking". *Appalachian Power Co.* v. *Johnson*, 137 Va. 12, 26, 119 S.E. 253, 257 (1923). In fixing damages to "other property", the commissioners are limited by the express language of the statute to those damages incurred "by reason of the taking". With respect to both the land taken and damages to other property caused by the taking, it is the "taking" which gives birth to the right to "just compensation". The taking begins when the condemnation petition is filed.[3]

The rule urged by Farmbest would authorize compensation for moving costs incurred, not by reason of a taking, but by reason of a proposed taking. As landowners are aware, condemnation proposals often fail. Sometimes, as here, proposals to condemn require approval of a local legislative body or a federal executive agency, or both. Sometimes, an approved proposal is frustrated by refusal or failure to fund. Sometimes, the proposed project is modified to exclude part of the property originally sought. And sometimes, for practical or policy reasons, the project is abandoned altogether.

The condemnation *proposal* is no more than a proposal until the taking has begun. Reading the Act as a whole, we perceive the legislative intent to be and we hold that the landowner's right to damages for the costs of moving personalty from realty to be condemned is limited to costs incurred after the condemnation petition is filed.[4] Whatever force there may be to the argument that costs incurred before that point, in good faith

---

[2] When the Authority filed its petition, the "just compensation" clause was found in Va. Const. Art. I, § 11 (1971).

[3] *See* Code § 25-46.9 (Repl. Vol. 1973) which begins with the language, "Proceedings for condemnation shall be initiated by filing the petition . . ."

[4] Our holding does not limit the power granted the governing body of a city under Code § 25-46.36 (Repl. Vol. 1973) to "authorize the payment of relocation costs in connection with federally assisted programs under such rules and regulations as the program may require."

reliance upon the proposal, should be recoverable in cases where the proposal ripens into a taking, we cannot judicially invent a rule, the merits of which involve public policy judgments which are properly the province of the General Assembly.

Accordingly, insofar as the final decree confirmed the $492,800 award for the taking and the award of compensation for the $7,500 moving cost item and the $4,027 moving cost item, the decree is affirmed; insofar as the final decree confirmed the award of compensation for the $31,892 moving cost item, the decree is reversed and final judgment is entered here for the Authority.

*Affirmed in part, reversed in part, and final decree.*