COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Elder and Bumgardner
Argued at Richmond, Virginia


CITY OF HOPEWELL AND VIRGINIA MUNICIPAL
 GROUP SELF-INSURANCE ASSOCIATION
                                          OPINION BY
v.        Record No. 1369-97-2        JUDGE LARRY G. ELDER
                                          JULY 28, 1998
MICHAEL W. TIRPAK


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            S. Vernon Priddy, III (Sands, Anderson,
            Marks & Miller, on briefs), for appellants.

            B. Mayes Marks, Jr. (B. Mayes Marks, Jr.,
            P.C., on brief), for appellee.


        The City of Hopewell and Virginia Municipal Group

Self-Insurance Association (collectively "employer") appeal a

decision of the Workers' Compensation Commission ("commission")

awarding temporary total disability and medical benefits to

Michael W. Tirpak ("claimant"), who is a police officer.

Employer contends the commission erred when it (1) concluded it

had subject matter jurisdiction over claims involving gradually

incurred heart disease, (2) found that a diagnosis of claimant's

heart disease was communicated to him on February 17, 1995, and

(3) found that employer failed to rebut the statutory presumption

contained in Code § 65.2-402(B) that claimant's heart disease was

caused by his employment as a police officer.  While this appeal

was pending, claimant petitioned this Court to have the case

remanded for new factual findings in light of Augusta County

Sheriff's Dep't v. Overbey, 254 Va. 522, 492 S.E.2d 631 (1997),

and <u>City of Richmond Police Dep't v. Bass</u>, 26 Va. App. 121, 493 S.E.2d 661 (1997), both of which were decided after the commission's decision in this case. For the reasons that follow, we affirm in part, vacate in part, and remand.

I.

FACTS

Claimant has worked as a police officer for the City of Hopewell since 1973. On February 17, 1995, he was diagnosed with multi-vessel coronary artery disease by Dr. Ashok Kumar. Claimant underwent triple bypass surgery on February 21 and returned to work on May 22.

Claimant filed a claim with the commission seeking medical and temporary total disability benefits stemming from his heart disease. During a hearing on claimant's claim, both parties presented evidence regarding the causation of claimant's heart disease. Following the hearing, a deputy commissioner awarded claimant temporary total disability benefits from February 8, 1995, through May 21, 1995, and medical benefits from January 24, 1995, and continuing. Employer appealed, and the commission affirmed. The commission found that Dr. Kumar's diagnosis on February 17, 1995 informed claimant that his heart disease was an occupational disease. The commission also found that the evidence presented by employer failed to rebut the statutory presumption of Code § 65.2-402(B) that claimant's heart disease was suffered in the line of duty. In its statement of the

-2-

applicable law, the commission stated that "[t]he employer fails to rebut the presumption [of Code § 65.2-402(B)] where a work related factor such as occupational stress is not excluded." The commission also concluded that claimant's claim was not barred by Stenrich Group v. Jemmott, 251 Va. 186, 467 S.E.2d 795 (1996), and its progeny.

## II.

### COMMISSION'S SUBJECT MATTER JURISDICTION

### OVER CLAIM REGARDING GRADUALLY INCURRED HEART DISEASE

Employer contends the commission lacked subject matter jurisdiction over claimant's claim. It argues that, in light of Jemmott and Allied Fibers v. Rhodes, 23 Va. App. 101, 474 S.E.2d 829 (1996), heart disease resulting from "cumulative exposure to causative factors" is no longer covered by the Workers' Compensation Act ("Act"). As such, employer asserts the commission is without jurisdiction under Code § 65.2-402(B) to hear claims stemming from gradually incurred heart disease. We disagree.

We hold that neither Jemmott nor Rhodes has stripped the commission of subject matter jurisdiction under Code § 65.2-402(B) to hear claims for the compensation of heart disease. Employer correctly contends that, unless deemed compensable by the General Assembly, "cumulative trauma conditions, regardless of whether they are caused by repetitive motion, are not compensable under the Act." Rhodes, 23 Va. App.

at 104, 474 S.E.2d at 830 (citing Jemmott, 251 Va. at 199, 467
S.E.2d at 802).  However, the General Assembly has expressly
empowered the commission with jurisdiction to determine "[a]ll
questions arising under [the Act], if not settled by agreements
of the parties interested therein with the approval of the
Commission . . . ."  Code § 65.2-700.  Whether a particular
ailment is caused by cumulative trauma and whether it is a
compensable disease are questions that arise under the Act.  See
A New Leaf, Inc. v. Webb, 26 Va. App. 460, 466, 467-68, 495
S.E.2d 510, 513, 514 (1998).  Thus, even assuming claimant's
heart disease was not compensable because it was gradually caused
by the process of trauma, the commission had statutory authority
to receive evidence and make this determination.  In addition,
notwithstanding case law construing the meaning of "disease"
under the Act,[1] the General Assembly, by enacting Code
§ 65.2-402, expressly indicated its intent that occupational
"heart disease" will be included as a compensable "disease."
Even if all heart disease is caused gradually by the process of
trauma, the General Assembly has expressly removed this ailment
from those cumulative trauma conditions that are otherwise not
compensable as a "disease" when it is incurred by the public
servants enumerated in the statute.

---

[1]See Stenrich Group v. Jemmott, 251 Va. 186, 467 S.E.2d 795
(1996); Merillat Indus., Inc. v. Parks, 246 Va. 429, 436 S.E.2d
600 (1993); Holly Farms/Federal Co. v. Yancey, 228 Va. 337, 340,
321 S.E.2d 298, 299 (1984); A New Leaf, Inc. v. Webb, 26 Va. App.
460, 495 S.E.2d 510 (1998); Allied Fibers v. Rhodes, 23 Va. App.
101, 474 S.E.2d 829 (1996).

III.

COMMUNICATION DATE OF DIAGNOSIS

Employer contends the commission erred when it found that claimant received a diagnosis of an occupational disease on February 17, 1995.  Because credible evidence in the record supports the commission's finding, we disagree with employer's contention.

An occupational disease is not compensable under the Act until a diagnosis of the occupational disease has been communicated to the employee.  See Island Creek Coal Co. v. Breeding, 6 Va. App. 1, 9, 365 S.E.2d 782, 787 (1988); Code § 65.2-403.  "The diagnosis need not contain precise medical terminology as long as the diagnosis is definite and informs the claimant in clear and understandable language that he or she is suffering from a disease that arises out of and in the course of employment."  Via v. Citicorp Mortgage, Inc., 10 Va. App. 572, 576, 394 S.E.2d 505, 507 (1990) (citation omitted).  Claimant testified that on February 17, 1995, the day of his cardiocatheterization, Dr. Kumar told him and his wife that "stress on the job" was among the contributing factors that caused his heart disease.  When Dr. Kumar was asked whether he discussed the causation of claimant's heart disease with him on February 17, the doctor responded that he "[did] not recall the details" of the conversation.  Because claimant's uncontradicted account of his discussion with Dr. Kumar on February 17 indicates

that he received a diagnosis of an occupational disease, we hold that the commission's factual finding was not erroneous.

LEGAL STANDARD APPLIED BY THE COMMISSION REGARDING

THE REBUTTAL OF THE PRESUMPTION OF CODE § 65.2-402(B)

Both employer and claimant argue that Overbey and Bass rendered incorrect the legal standard applied by the commission and that this case should be remanded to the commission for factual findings based upon the correct legal standard. We agree.

The Act "currently provides coverage for impairments arising out of and in the course of employment that fall into one of two categories: (1) 'injuries by accident' and (2) 'occupational disease.'" A New Leaf, Inc., 26 Va. App. at 465, 495 S.E.2d at 513 (quoting Code § 65.2-101). Under Code § 65.2-402(B), heart disease incurred by a police officer employed by a city is "presumed to be [an] occupational disease, suffered in the line of duty, that [is] covered by [the Act] . . . ."[2] This presumption ("causation presumption") does not automatically entitle an employee covered by Code § 65.2-402(B) to benefits. Instead, the causation presumption shifts the evidentiary burden

---

[2]Code § 65.2-402(B) states in relevant part:

> heart disease causing . . . any health
> condition or impairment resulting in total or
> partial disability of . . . (iii) members of
> county, city or town police departments . . .
> shall be presumed to be occupational
> diseases, suffered in the line of duty, that
> are covered by this title unless such
> presumption is overcome by a preponderance of
> competent evidence to the contrary.

from the claimant to the employer to "overcome [the presumption] by a preponderance of competent evidence to the contrary."  Code § 65.2-402(B); see Commonwealth, Dep't of State Police v. Hines, 221 Va. 626, 629-30, 272 S.E.2d 210, 213 (1980) (citing Page v. City of Richmond, 218 Va. 844, 847, 241 S.E.2d 775, 777 (1978)).

In Overbey, the Supreme Court held that, in order to rebut the causation presumption, an employer is not required to offer evidence that excludes "the possibility of all job-related [hypotheses of] causation" when there is no medical evidence establishing any causal relationship.  Overbey, 254 Va. at 526, 492 S.E.2d at 634.  Thus, in a case in which no evidence is presented proving that occupational stress was a contributing factor to the claimant's heart disease, "the employer [does not] have the burden of excluding the 'possibility' that job stress may have been a contributing factor . . . ."  Id. at 527, 492 S.E.2d at 634.

In Bass, this Court applied the holding of Overbey to a case in which one physician opined that the "probable cause" of the claimant's heart disease was "genetic and environmental."  Bass, 26 Va. App. at 134, 493 S.E.2d at 667.  None of the doctors who expressed an opinion in Bass "opined to a reasonable degree of medical certainty that job stress was a causative factor in the disease [the] claimant suffered."  Id. at 135, 493 S.E.2d at 667.  Based on the Supreme Court's holding in Overbey that the employer was not required to exclude the possibility that job

stress may have contributed to the claimant's heart disease, we held that the commission erred when it found the employer had failed to rebut the causation presumption. Id. at 134, 493 S.E.2d at 667 (citing Overbey, 254 Va. at 527, 492 S.E.2d at 634).

In light of Bass and Overbey, we hold that the commission applied an incorrect legal standard in this case when it found that employer had failed to rebut the causation presumption. In its opinion, the commission stated that "[t]he employer fails to rebut the presumption [of Code § 65.2-402(B)] where a work related factor such as occupational stress is not excluded." The language used by the commission indicates that, as a prerequisite for rebutting the causation presumption, it required employer to exclude the possibility of work-related causes without regard to whether evidence was presented that such a causal link existed. However, as is made clear by Overbey and Bass, this standard is not the law in Virginia. An employer is not required to prove that specific "work-related factors" were not the cause of the claimant's heart disease when no evidence in the record brings such a causal connection out of the realm of speculation. Because the record indicates the commission made its decision regarding whether employer rebutted the causation presumption based upon an incorrect legal standard, we remand for new findings employing the correct legal standard.

V.

REBUTTING THE PRESUMPTION OF CODE § 65.2-402(B)

Employer makes additional legal arguments that are likely to arise on remand.  First, it contends Overbey stands for the proposition that determining whether the causation presumption has been rebutted is based solely upon the evidence presented during the employer's rebuttal case.[3]  Along these lines, the concurring opinion contends the causation presumption shifts only the burden of production on the issue of causation to the employer and that the presumption disappears upon the introduction of contrary evidence by the employer.  Second, employer argues that, under Overbey, all an employer must show to rebut the causation presumption is that the claimant's heart disease had at least one non-work-related cause.[4]  We address each issue in turn.

A.

EFFECT OF THE PRESUMPTION OF CODE § 65.2-402(B)

ON THE BURDENS OF PRODUCTION AND PERSUASION

First, we consider the effect of the causation presumption when an employer offers evidence tending to show that a

---

[3]In its brief, employer argues that it rebutted the presumption when it "presented its prima facie medical case."  It contends that, after it burst the bubble of the causation presumption, "[t]he burden then shifted back to [claimant] to prove his case under Virginia Code § 65.2-401 as recognized implicitly in Overbey."

[4]Employer argues in its brief that it rebutted the presumption because it "proved, by a preponderance of competent medical evidence, non-work-related causes of [claimant's] heart disease."

claimant's heart disease has a non-work-related cause. Because

the Virginia Supreme Court stated in <u>Fairfax County Fire and</u>

<u>Rescue Services v. Newman</u>, 222 Va. 535, 281 S.E.2d 897 (1981),

that the causation presumptions now codified at Code § 65.2-402

cast "the ultimate risk of nonpersuasion" upon the employer, 222

Va. at 541, 281 S.E.2d at 901, and this statement was not

expressly addressed by the Supreme Court in <u>Overbey</u>, we conclude

that the causation presumption continues to have the effect of

shifting to the employer both the burden of production and the

burden of persuasion on the issue of causation. As such, we hold

that whether an employer has rebutted the causation presumption

is determined by the commission in its role as fact finder after

weighing the evidence offered by both parties on the issue of

causation.

1.

Burden of Proof and Presumptions

In order to understand the Supreme Court's interpretation of

the causation presumption in <u>Newman</u>, the law regarding the burden

of proof and presumptions must be examined. In every judicial

proceeding, the procedural mechanism known as the "burden of

proof" is allocated.[5] The phrase "burden of proof" refers to two

_____

[5]<u>See</u> 1 Charles E. Friend, <u>The Law of Evidence in Virginia</u>
§ 9-3 (4th ed. 1993); 2 <u>McCormick on Evidence</u> §§ 336-37 (John W.
Strong ed., 4th ed., 1992); 9 Wigmore, <u>Evidence</u> §§ 2485-89
(Chadbourn rev. 1981); 1 Clifford S. Fishman, <u>Jones on Evidence:</u>
<u>Civil and Criminal</u> § 3:1 (7th ed. 1992) [hereinafter <u>Jones on</u>
<u>Evidence</u>].

related but distinct concepts: (1) the "burden of production," which is the obligation to make a prima facie case, i.e., to introduce evidence sufficient as a matter of law to enable a rational fact finder to find that a particular proposition of fact is true and (2) the "burden of persuasion," which is the obligation to introduce evidence that actually persuades the fact finder, to the requisite degree of belief, that a particular proposition of fact is true. See Ohlen v. Shively, 16 Va. App. 419, 424, 430 S.E.2d 559, 561-62 (1993) (citing Westmoreland Coal Co. v. Campbell, 7 Va. App. 217, 222, 372 S.E.2d 411, 415 (1988)).[6] The placement of these two burdens is significant because the party to whom they are assigned is liable to an adverse decision if he or she fails to meet them. See Brothers Constr. Co. v. Virginia Employment Comm'n, 26 Va. App. 286, 298, 494 S.E.2d 478, 484 (1998) (citing Virginia Employment Comm'n v. Thomas Regional Directory, Inc., 13 Va. App. 610, 616, 414 S.E.2d 412, 416 (1992)).[7]

It is well established that the burden of production can shift from one party to the other during the course of a trial. See Redford v. Booker, 166 Va. 561, 569, 185 S.E. 879, 883 (1936) (citing Riggsby v. Tritton, 143 Va. 903, 918, 129 S.E. 493, 498

---

[6]See 1 Friend, supra, §§ 9-1 to 9-2; 2 McCormick on Evidence, supra, § 336; 9 Wigmore, Evidence, supra, §§ 2485-89; 1 Jones on Evidence, supra, §§ 3:4 to 3:6.

[7]See 1 Friend, supra, § 9-2(a) & (b); 2 McCormick on Evidence, supra, § 336; 9 Wigmore, Evidence, supra, §§ 2485-89.

(1925)).[8]  Although the burden of persuasion "does not normally shift" during a trial, the burden of persuasion on a particular issue may be cast upon the defendant, particularly in cases involving certain kinds of presumptions.[9]  Although the burdens of production and persuasion are generally allocated to either the plaintiff, the party seeking to disturb the status quo, the party having peculiar knowledge of the matter, or according to the pleadings, there is no fixed rule for determining how these burdens should be allocated in every instance.[10]  The allocation of the burdens of production and persuasion "depends ultimately on policy considerations," 9 Wigmore, Evidence § 2486 (Chadbourn rev. 1981), and when the law underlying a particular cause of action is legislative in origin, the issue is resolved "by deferring, when possible, to legislative intent."  1 Clifford S. Fishman, Jones on Evidence:  Civil and Criminal § 3:14 (7th ed. 1992); see also Newman, 222 Va. at 541, 281 S.E.2d at 901; 2 McCormick on Evidence § 337 (John W. Strong ed., 4th ed., 1992).

A presumption is a procedural rule of law "directing that if a party proves certain facts (the 'basic facts') at a trial or

---

[8]See 1 Friend, supra, § 9-4; 2 McCormick on Evidence, supra, § 337; 9 Wigmore, Evidence, supra, § 2489; 1 Jones on Evidence, supra, § 3:29.

[9]1 Friend, supra, § 9-4(c); see 1 Jones on Evidence, supra, § 3:29; 2 McCormick on Evidence, supra, § 337.

[10]See 1 Friend, supra, § 9-3(a); 2 McCormick on Evidence, supra, § 337; 9 Wigmore, Evidence, supra, § 2486; 1 Jones on Evidence, supra, §§ 3:11 to 3:14.

hearing, the factfinder <u>must</u> also accept an additional fact (the 'presumed fact') as proven unless sufficient evidence is introduced tending to rebut the presumed fact."  1 <u>Jones on Evidence</u>, <u>supra</u>, § 4:2 (emphasis in original); <u>see also</u> <u>Martin v. Phillips</u>, 235 Va. 523, 530, 369 S.E.2d 397, 401 (1988).[11] Presumptions affect the evidentiary burdens of the parties with regard to particular factual issues.[12]  They are created for any of several reasons, including procedural fairness, procedural economy, the probability of the matter at issue, and the implementation of social policy.[13]

The actual effect of presumptions on the allocation of the burdens of production and persuasion is a hotly contested legal issue that "has literally plagued the courts and legal scholars" for decades.[14]  On one side of the issue is the "Thayer theory" or "bursting bubble theory," which states that the only effect of a presumption is to shift the burden of <u>production</u> with regard to the presumed fact.[15]  Under this theory, once the party against

_____

[11]<u>See</u> 1 Friend, <u>supra</u>, § 10-1(c); 2 <u>McCormick on Evidence</u>, <u>supra</u>, § 342; 9 Wigmore, <u>Evidence</u>, <u>supra</u>, § 2491.

[12]<u>See</u> 2 <u>McCormick on Evidence</u>, <u>supra</u>, § 343; 9 Wigmore, <u>Evidence</u>, <u>supra</u>, § 2491; 1 <u>Jones on Evidence</u>, <u>supra</u>, §§ 4:4 to 4:8.

[13]<u>See</u> 2 <u>McCormick on Evidence</u>, <u>supra</u>, § 343; 9 Wigmore, <u>Evidence</u>, <u>supra</u>, § 2491; 1 <u>Jones on Evidence</u>, <u>supra</u>, §§ 4:4 to 4:8.

[14]2 <u>McCormick on Evidence</u>, <u>supra</u>, § 344; <u>see</u> 1 Friend, <u>supra</u>, § 10-5; 9 Wigmore, <u>Evidence</u>, <u>supra</u>, § 2493a; 1 <u>Jones on Evidence</u>, <u>supra</u>, § 4:9.

[15]<u>See</u> 2 <u>McCormick on Evidence</u>, <u>supra</u>, § 344(A); 9 Wigmore,

whom the presumption operates introduces evidence sufficient as a matter of law to establish a prima facie case, the presumption is "spent and disappears," and the party who initially benefited from the presumption still has the burden of persuasion on the factual issue in question.[16]

The competing school of thought, which is known as the "Morgan theory," criticizes the "bursting bubble theory" for giving presumptions an effect that is too "slight and evanescent" when viewed in light of the policy reasons that justified their creation.[17] Under the "Morgan theory," a presumption should have the effect of shifting both the burden of production and the

Evidence, supra, § 2487(d); 1 Jones on Evidence, supra, § 4:10.

[16]2 McCormick on Evidence, supra, § 344(A); see 9 Wigmore, Evidence, supra, § 2487(d); 1 Jones on Evidence, supra, § 4:10. The proponents of this theory contend it has the beneficial effect of "requir[ing] the artificial force infused into presumptions . . . to be treated as the equivalent of the natural force of evidence which -- standing alone -- would entitle its beneficiary to a directed verdict." 9 Wigmore, Evidence, supra, § 2493g.

[17]2 McCormick on Evidence, supra, § 344(A); see 9 Wigmore, Evidence, supra, § 2493c; 1 Jones on Evidence, supra, § 4:11. Professor Morgan, the theory's proponent, observed that, under the Thayer theory, a presumption can be destroyed by the mere introduction of evidence "which comes from interested witnesses, and which is of a sort that is usually disbelieved." 9 Wigmore, Evidence, supra, § 2493c (quoting 18 A.L.I. Proceedings 221 (1941)). He argued:

> I think that you ought to give greater effect
> to a presumption than the mere burden of
> putting in evidence which may be disbelieved
> by the trier of fact.

Id.

burden of persuasion on the factual issue in question to the party against whom the presumption operates.[18]  This effect ensures that a presumption, particularly one created to further social policy, has "enough vitality to survive the introduction of opposing evidence which the trier of fact deems worthless or of slight value."  9 Wigmore, Evidence, supra, § 2493g.

The law of presumptions in Virginia reflects both the Thayer theory and the Morgan theory.  In an apparent Thayerian reference, the Virginia Supreme Court has stated that "[n]o presumption . . . can operate to shift the ultimate burden of persuasion from the party upon whom it was originally cast," Martin, 235 Va. at 526, 369 S.E.2d at 399, and there are numerous presumptions of the "bursting bubble" variety whose effect is merely to shift the burden of production on the factual issue in question.[19]  However, there are at least three "Morgan theory" presumptions in Virginia law that have the effect of shifting both the burdens of production and persuasion with regard to a particular factual issue:  the presumption against suicide that arises in the context of claims under life insurance policies,

---

[18]See 2 McCormick on Evidence, supra, § 344(A); 9 Wigmore, Evidence, supra, § 2493c; 1 Jones on Evidence, supra, § 4:11.

[19]See, e.g., Volvo White Truck Corp. v. Vineyard, 239 Va. 87, 91-92, 387 S.E.2d 763, 766 (1990) (holding that presumption that bailee was negligent operates to shift only the burden of production and not the burden of persuasion); Martin, 235 Va. at 530, 369 S.E.2d at 401 (holding that presumption of undue influence in cases involving wills and deeds shifts only the burden of production and not the burden of persuasion).

the presumption of negligence arising in cases involving damaged goods delivered by a common carrier, and the presumption of legitimacy of a child born in wedlock.

The Supreme Court expressly considered the issue of the effect of the presumption against suicide on the burden of proof in Life & Cas. Ins. Co. of Tenn. v. Daniel, 209 Va. 332, 340–42, 163 S.E.2d 577, 583–86 (1968). Under this presumption, "when death by external and violent means is proven, a presumption arises in favor of the beneficiary that the death was accidental . . . ." Id. at 335, 163 S.E.2d at 580. Addressing the effect of this presumption on the burden of proof, the Virginia Supreme Court held that, once the presumption arises, the burden of persuasion on the issue of whether the insured's death was caused by suicide shifts to the insurer and remains there throughout the remainder of the trial:

> Evidence to overcome [the presumption against suicide] must be clear and satisfactory and to the exclusion of any reasonable hypothesis consistent with death from natural or accidental causes. The presumption remains throughout the trial unless the evidence of suicide is so conclusive that only one reasonable deduction can be drawn therefrom, and it becomes a question of law for the court to decide. The jurors will weigh the evidence and test the persuasiveness of the facts proved on the issue of suicide, in the light of human experience, and the truth gained from it, that under most circumstances a human being will not deliberately and intentionally destroy himself.

Id. at 341-42, 163 S.E.2d at 584-85 (emphasis added).[20]

In concluding that the presumption against suicide shifted the

burden of persuasion on the issue to the insurer, the Supreme

Court relied on Morgan-like reasoning:

> If the presumption disappeared once
> evidence to the contrary appeared, there
> would be nothing for that evidence to
> controvert. The presumption should stand in
> the face of such evidence and be given weight
> in determining the fact question. When
> positive evidence appears to indicate suicide
> it stands on one side, and the evidence of
> the plaintiff-beneficiary, together with the
> presumption, on the other, and the trier of
> fact must weigh them both in determining the
> question.

Id. at 340, 163 S.E.2d at 583.

Regarding the presumption of negligence that arises in cases

where damaged goods are delivered by a common carrier, the

Supreme Court has held that "[w]hen the plaintiff proves that the

goods were received by the carrier in good order and delivered by

the delivering carrier in bad order," a presumption arises that

the goods were damaged due to the carrier's negligence.

Chesapeake and Ohio Ry. Co. v. Timberlake, Currie & Co., Inc.,

147 Va. 304, 309-13, 137 S.E. 507, 508-09 (1927). This

presumption shifts to the carrier both the burden of production

---

[20]In his treatise on the law of evidence in Virginia,
Professor Friend states that the presumption against suicide
"shifts the burden of persuasion to the insurer to establish by
'clear and satisfactory evidence' that the death was due to
suicide." 1 Friend, supra § 10-22 n.4 (citing Atkinson v. Life
Ins. Co. of Va., 217 Va. 208, 210, 228 S.E.2d 117, 119 (1976))
(emphasis in original).

and the burden of persuasion to either disprove the facts established by the plaintiff or prove that the damage to the goods was caused by one of five specific causes:  the inherent nature of the goods, interference by the owner, or acts of "God," of "the public enemy," or of "public authority."  Id. at 309-10, 137 S.E. at 507.  The Court expressly stated that "whether the presumption of negligence arising from the damaged condition of the [goods] had been rebutted, [was a question] for the jury."  Id. at 313, 137 S.E. at 509 (emphasis added).  Applying a Morgan-like approach, the Court reasoned that:

> such severity as may inhere in the rule seems necessary to the security of property, and the protection of commerce; it is founded on the great principle of public policy, has been approved by many generations of wise men; and if the courts were now at liberty to make instead of declaring the law, it may well be questioned whether they could devise a system which on the whole would operate more beneficially.

Id. (citation omitted) (emphasis added).

Turning to the presumption of legitimacy, the Supreme Court indicated as early as 1888 that this presumption has the effect of shifting the burden of persuasion on the issue of the child's legitimacy to the party claiming illegitimacy.  See Scott v. Hillenberg, 85 Va. 245, 7 S.E. 377 (1888).  In Scott, the Court stated:

> Throughout the investigation, the presumption in favor of legitimacy is to have its weight and influence; and the evidence against it ought to be strong, distinct, satisfactory and conclusive. . . .  The duty of the jury is to weigh the evidence against the

> presumption (of legitimacy,) and to decide
> according to the preponderance.

Id. at 247, 7 S.E. at 378 (parenthetical in original). The Supreme Court has since reaffirmed the principle that the presumption of legitimacy is not rebutted until the fact finder weighs the persuasiveness of the evidence. See Cassady v. Martin, 220 Va. 1093, 1098, 266 S.E.2d 104, 106 (1980) (citing Scott and stating that "in our view, . . . it was for the jury to say whether the presumption of legitimacy had been overcome").[21]

We conclude from the co-existence of "Thayer theory" presumptions and "Morgan theory" presumptions in Virginia law that, in practice, the Supreme Court follows the approach advocated by commentators on the common law rules of evidence: there is no single rule governing the effect of all presumptions; instead, the effect of a particular presumption on the burdens of production and persuasion depends upon the purposes underlying the creation of the presumption.[22]

2.

Newman and the Effect of the Presumptions of Code § 65.2-402

In Newman, the Supreme Court indicated that the presumptions

---

[21]Regarding the presumption of legitimacy, Professor Friend states that "it appears to shift the burden of persuasion to the person claiming illegitimacy." See 1 Friend, supra, § 10-41 & n.2 (citing Scott, 85 Va. 245, 7 S.E. 377).

[22]See 2 McCormick on Evidence, supra, § 344(B); 1 Jones on Evidence, supra, §§ 4:12 to 4:16; but see 9 Wigmore, Evidence, supra, § 2493g (arguing that the Thayer theory should apply to all presumptions).

included in Virginia's heart and lung statute, then codified at Code § 65.1-47.1, are "Morgan theory" presumptions whose effect is to shift to the employer both the burden of production and the burden of persuasion on the issue of causation. The issue in Newman was whether the causation presumption regarding respiratory diseases, now codified at Code § 65.2-402(A), was unconstitutionally irrebuttable. In its discussion of this issue, the Supreme Court expressly addressed how the General Assembly intended this presumption to be applied:

> The legislature was making a public policy judgment in its allocation of the burden of proof the ultimate risk of nonpersuasion in these cases. The fact that it chose to cast that burden upon the employer infringes no constitutional right.

Newman, 222 Va. at 541, 281 S.E.2d at 901. It is fundamental and well settled that the "risk of nonpersuasion" is a direct reference to the burden of persuasion. See Darden v. Murphy, 176 Va. 511, 518, 11 S.E.2d 579, 580 (1940) (stating that "the burden of proof in the sense of the risk of nonpersuasion" is distinguishable from "the burden of going forward with the evidence").[23]

The Supreme Court also indicated in Newman that the causation presumption regarding respiratory diseases shifts both the burdens of production and persuasion to the employer by

---

[23]See 1 Friend, supra, § 9-2(b) (stating that the term "risk of nonpersuasion" is a "particularly apt" reference to the burden of persuasion); see also 2 McCormick on Evidence, supra, § 336; 9 Wigmore, Evidence, supra, §§ 2485-89.

comparing it to the presumption against suicide.  Citing <u>Daniel</u>,

the Court stated that this causation presumption operates like

the presumption against suicide:

> Such burden on the employer is similar, we
> believe to the burden upon an insurance
> carrier who relies upon suicide as a defense
> to an accident policy where the insurer has
> the burden of proving suicide . . . .

<u>Newman</u>, 222 Va. at 541, 281 S.E.2d at 901.  Thus, according to

the Supreme Court's reasoning, the causation presumption "does

not just disappear when evidence is offered in opposition

thereto," <u>Daniel</u>, 209 Va. at 340, 163 S.E.2d at 583, and, like

the presumption against suicide, it has the effect of shifting

both the burden of production and the burden of persuasion on the

issue of causation to the employer.

Although, in <u>Newman</u>, the Supreme Court considered the

General Assembly's intended effect of the causation presumption

<u>regarding respiratory diseases</u>, we believe that its analysis

applies with equal force to the causation presumption regarding

heart disease of Code § 65.2-402(B).  At the time <u>Newman</u> was

decided in 1981, <u>both</u> presumptions were codified at Code

§ 65.1-47.1 and shared the same operative clause.  <u>See</u> Code

§ 65.1-47.1 (1980 Repl. Vol.) (stating that, in cases involving

their respective classes of covered employees, both respiratory

disease and heart disease "shall be presumed to be an

occupational disease suffered in the line of duty that is covered

by this act unless the contrary be shown by a preponderance of

the evidence").  Currently, except for the diseases and employees covered by each, the two presumptions continue to share the identical operative language.  See Code § 65.2-402(A) & (B) (both stating that their respective diseases "shall be presumed to be occupational diseases, suffered in the line of duty, that are covered by this title unless such presumption is overcome by a preponderance of competent evidence to the contrary").  The purpose of both presumptions is "to eliminate the necessity for proof by the claimant of causal connection" by placing the burden of proof on the employer.  Page, 218 Va. at 847, 241 S.E.2d at 777; see Newman, 222 Va. at 541, 281 S.E.2d at 281.  In light of the identical language and purpose of these presumptions, it is inconceivable to us that the causation presumption regarding respiratory diseases would be interpreted as casting upon the employer the ultimate risk of nonpersuasion on the issue of causation but not doing so in cases involving heart disease.[24]

---

[24]In the same vein, we hold that Newman requires us to reject employer's argument that the presumption of Code § 65.2-402(B) is unconstitutionally irrebuttable.  In Newman, the Court held that the causation presumption regarding respiratory diseases was neither irrebuttable nor violative of due process.  See Newman, 222 Va. at 541, 281 S.E.2d at 901.  In reaching its conclusion, the Court reasoned:

> It is of no constitutional significance that the present state of medical science and the healing arts places a greater burden on the employer. . . .  As long as an employer may introduce evidence in rebuttal of the presumption, the employer's constitutional rights of due process have been protected.  The absence of evidence is a problem of proof and does not automatically make the presumption irrebuttable.

Even if <u>Newman</u> is not controlling, the General Assembly's policy reasons for creating the causation presumption support the conclusion that, when applicable, the presumption shifts to the employer the burden of persuasion on the issue of causation. Because the presumption is legislative in origin, its effect on the burden of production and the burden of persuasion is a matter of legislative intent.  <u>See</u> 1 <u>Jones on Evidence</u>, <u>supra</u>, § 3:14. The General Assembly's purpose for enacting the causation presumption was to protect the public servants enumerated in the statute from the risk of nonpersuasion in claims involving heart disease and hypertension.  <u>Newman</u>, 222 Va. at 541, 281 S.E.2d at 901.  When it enacted the presumptions contained in Code § 65.2-402, the General Assembly "knew that the causes of pulmonary and cardiac diseases are unknown and that the medical community is split regarding the impact of stress and work environment on these diseases."  <u>Id.</u> at 540, 281 S.E.2d at 900. The General Assembly specifically recognized that "it is difficult to conclusively link stress to heart disease in an individual case" and that "[p]ossibly no employees are subjected to more stress than fire fighters and law enforcement officers."  <u>City of Waynesboro, Sheriff's Dep't v. Harter</u>, 222 Va. 564, 567,

_____

<u>Id.</u>  Likewise, because neither the text of Code § 65.2-402(B) nor the cases of this Court and the Supreme Court applying this statute prohibits an employer from introducing evidence regarding the non-work-related causes of a claimant's heart disease, the causation presumption regarding heart disease remains both rebuttable and constitutional.

281 S.E.2d 911, 913 (1981).

Concluding that the causation presumption is a "bursting bubble" presumption would defeat the General Assembly's intent. Given the division in the medical community regarding the causative link between occupational stress and heart disease and the abundance of "risk factors" for heart disease that occur in everyday life, it is not difficult to imagine that, in cases where the presumption arises, an employer will be able to introduce evidence that a police officer's or firefighter's heart disease was caused solely by non-work-related factors. In such cases, under the "bursting bubble" theory, the causation presumption would disappear the moment such evidence was introduced and before the commission, in its role as fact finder, had the opportunity to weigh its credibility and persuasiveness.[25] Moreover, if the presumption does not operate

----

[25]As with any determination of causation, whether an employer has proven that a claimant's heart disease or hypertension was produced by non-work-related causes is a question of fact. See City of Norfolk v. Lillard, 15 Va. App. 424, 430, 424 S.E.2d 243, 246 (1992) (citing Ingersoll-Rand Co. v. Musick, 7 Va. App. 684, 688, 376 S.E.2d 814, 817 (1989)). When determining questions of fact,

> the weight to be given the evidence, the credibility of witnesses, and the resolution of conflicting opinions of expert medical testimony are matters solely . . . decided by the Commission.

Virginia Dep't of State Police v. Talbert, 1 Va. App. 250, 254, 337 S.E.2d 307, 309 (1985). The factual findings of the commission are binding on appeal if they are supported by credible evidence in the record. See Code § 65.2-706(A).

to shift the burden of persuasion to the employer, firemen and police officers face an onerous burden once the presumption is rebutted. Under the current statutory scheme for coverage of ordinary diseases of life, claimants must prove by clear and convincing evidence both that their ailment "arose out of and in the course of employment" and that it "did not result from causes outside of the employment." Ross Laboratories v. Barbour, 13 Va. App. 373, 376-77, 412 S.E.2d 205, 207-08 (1991) (emphasis added); see Code § 65.2-402. In light of the inherent difficulty of establishing the etiology of heart disease and the General Assembly's intent "to benefit and protect" the enumerated public servants from the risk of nonpersuasion, the only conclusion that avoids rendering the causation presumption too evanescent is that it was intended to operate as a "Morgan theory" presumption.[26]

---

[26]We also believe the language chosen by the General Assembly in Code § 65.2-402(B) indicates its intent to create a "Morgan theory" presumption. Code § 65.2-402(B) expressly states that the employer must rebut the causation presumption by "a preponderance of competent evidence to the contrary." It is well settled that the "preponderance of the evidence" standard sets forth "how convincing the evidence in favor of a fact must be in comparison with the evidence against it before that fact may be found . . . ." Metropolitan Stevedore Co. v. Rambo, ___ U.S. __, ___ n.9, 117 S. Ct. 1953, 1963 n.9, 138 L.Ed.2d 327 (1997) (emphasis added). The Supreme Court has equated the preponderance standard with the "greater weight of the evidence." Bedget v. Lewin, 202 Va. 535, 540, 118 S.E.2d 650, 654-55 (1961). In addition, the Supreme Court has held that doctrine of res ipsa loquitur does not shift the burden of persuasion because the defendant "is not required to offset it by a preponderance of the evidence." Riggsby, 143 Va. at 917, 129 S.E. at 498 (citation omitted) (emphasis added). Thus, the direct reference to the "preponderance" standard in Code § 65.2-402(B) clearly indicates the General Assembly intended for the causation presumption to shift the burden of persuasion to the employer.

This interpretation of Code § 65.2-402(B) is in accord with the treatment in other jurisdictions of similar presumptions in workers' compensation statutes benefiting public servants. See Cunningham v. City of Manchester Fire Dep't, 525 A.2d 714, 717-18 (N.H. 1987) (considering the Thayer and Morgan theories and concluding that the legislature intended the causation presumption to shift both the burdens of production and persuasion to the employer); Montgomery County Fire Bd. v. Fisher, 468 A.2d 625, 630-31 (Md. 1983) (same); Wright v. State Accident Ins. Fund, 613 P.2d 755, 759-61 (Or. 1980) (considering the Thayer and Morgan theories and concluding that the causation presumption does not disappear with the introduction of opposing evidence by the employer).

We note that, in Overbey, the Supreme Court arguably contradicted its earlier statements in Newman regarding the shifting from the claimant to the employer of the burden of persuasion on the issue of causation. The Court stated:

> Because we conclude that the employer introduced sufficient evidence to rebut the presumption, [the claimant] had the burden of "establishing by clear and convincing evidence, to a reasonable medical certainty," that his heart disease arose out of and in the course of his employment.

Overbey, 254 Va. at 527, 492 S.E.2d at 634. However, the only issue expressly addressed by the Court in Overbey was whether the employer is required to exclude every hypothetical possibility that the claimant's heart disease was work-related in order to

rebut the presumption.  See id. at 526, 492 S.E.2d at 633.

Because the effect of the causation presumption on the burdens of

production and persuasion was not the issue before the Court in

Overbey, this statement was dictum.  Significantly, the Supreme

Court made no direct reference to either Newman or its earlier

statement that the causation presumption casts "the ultimate risk

of nonpersuasion" upon the employer.  As the Supreme Court has

oft repeated, "'[i]n Virginia, the doctrine of stare decisis is

more than a mere cliche.'"  Nunnally v. Artis, 254 Va. 247,

252-53, 492 S.E.2d 126, 128-29 (1997) (quoting Selected Risks

Ins. Co. v. Dean, 233 Va. 260, 265, 355 S.E.2d 579, 581 (1987)).

Because the discussion in Newman regarding the General

Assembly's intended application of the causation presumptions of

Code § 65.2-402 is the most "full deliberation on the issue by

the [C]ourt" to date and because the Court made no express

reference to Newman in its opinion in Overbey, we do not believe

the Supreme Court intended Overbey to overrule Newman.  See

Selected Risks Ins. Co., 233 Va. at 265, 355 S.E.2d at 381.  As

such, we conclude that the Supreme Court's statement in Newman

regarding the effect of the causation presumption on the burdens

of production and persuasion is still the law in Virginia.

B.
EXTENT OF NON-WORK-RELATED CAUSATION

NECESSARY TO REBUT THE PRESUMPTION OF CODE § 65.2-402(B)

We next consider employer's contention that the causation

presumption is always rebutted when the employer offers evidence

-28-

that the claimant's heart disease had at least one non-work-related cause.  We hold that, because the causation presumption shifts both the burdens of production and persuasion to the employer, whether proof of a non-work-related cause is sufficient to rebut the presumption depends upon how the commission weighs the evidence presented by the parties.

As the Supreme Court held in <u>Overbey</u>, an employer is never required to exclude the "possibility" that particular conditions of a claimant's employment caused his or her heart disease.  <u>See</u> <u>Overbey</u>, 254 Va. at 526-27, 492 S.E.2d at 633-34.  As such, if the preponderance of the evidence produced by the parties indicates to the commission, the trier of fact, that the heart disease was caused by non-work-related factors and that there was no proximate causal connection between the disease and the employment, then the causation presumption is rebutted.[27]

However, a claimant who proves that the causation presumption applies to his or her claim is entitled to full benefits if there is affirmative evidence deemed persuasive by

---

[27]<u>See</u> <u>Overbey</u>, 254 Va. at 526-27, 492 S.E.2d at 634 (all of the credible evidence in record indicated that the cause of the claimant's ailment was non-work-related); <u>Doss v. Fairfax County Fire and Rescue Dep't</u>, 229 Va. 440, 442-43, 331 S.E.2d 795, 796-97 (1985) (same); <u>Cook v. City of Waynesboro Police Dep't</u>, 225 Va. 23, 30, 300 S.E.2d 746, 749 (1983) (same); <u>Bass</u>, 26 Va. App. at 134-35, 493 S.E.2d at 667 (same); <u>Estate of Montgomery v. City of Portsmouth Police Dep't</u>, 4 Va. App. 525, 528-29, 358 S.E.2d 762, 764-65 (1987) (credible evidence in record indicated that the cause of the claimant's ailment was non-work-related and the commission declined to credit claimant's evidence regarding work-related causes).

the commission that the employment was a contributing cause of the claimant's heart disease.[28]  Thus, if the preponderance of the evidence indicates to the commission that the claimant's heart disease had multiple causes, at least one of which is related to the employment, then the presumption that the heart disease was "suffered in the line of duty" is not rebutted.[29]

This understanding of the causation presumption is not only mandated by judicial precedent, it is dictated by the plain meaning of Code § 65.2-402(B).  In rebutting the presumption, the statute calls for the employer to prove by a preponderance of the evidence that the heart disease in question was not "an occupational disease, suffered in the line of duty."  This language, which is clear and unambiguous, plainly means that, in a case where, in the commission's opinion, the evidence preponderates that the heart disease is causally related to the employment, the employer has, in effect, failed to prove that the heart disease was not "suffered in the line of duty," and,

_____

[28]See Overbey, 254 Va. at 527, 492 S.E.2d at 634 (indicating that a claimant is entitled to benefits under Code § 65.2-402(B) when the evidence shows that at least one cause of the claimant's heart disease was "related to the employment"); Duffy v. Commonwealth/Dep't of State Police, 22 Va. App. 245, 251, 468 S.E.2d 702, 705 (1996) (holding that "'full benefits [are] allowed when it is shown that the employment is a contributing factor'" (citations and internal quotation marks omitted)).

[29]See Duffy, 22 Va. App. at 251, 468 S.E.2d at 705 (preponderance of the evidence demonstrated to commission that multiple factors, including job stress, contributed to the development of the police officer's disease); Talbert, 1 Va. App. at 253-54, 337 S.E.2d at 309 (same).

consequently, not met the burden imposed upon it by the presumption.

Even assuming that the language of Code § 65.2-402(B) is ambiguous, this understanding is consistent with the intent of the General Assembly.  When a statute is ambiguous, we resort to principles of statutory construction to resolve the ambiguity. See Virginia Dep't of Labor and Indus. v. Westmoreland Coal Co., 233 Va. 97, 101-02, 353 S.E.2d 758, 762 (1987).  "The ultimate purpose of these rules is to ascertain the intention of the legislature, and '[e]very statute is to be read so as to promote the ability of the enactment to remedy the mischief at which it is directed.'"  USAA Cas. Ins. Co. v. Alexander, 248 Va. 185, 194, 445 S.E.2d 145, 150 (1994) (citations omitted) (internal quotation marks omitted).  As part of the Workers' Compensation Act, which is remedial in character, the language of Code § 65.2-402(B) was intended to be liberally construed, without amending or extending its provisions, in order to attain the result desired by the General Assembly.  See Amherst County Bd. of Supervisors v. Brockman, 224 Va. 391, 397, 297 S.E.2d 805, 808 (1982); Humphries v. Newport News Shipbuilding and Dry Dock Co., Inc., 183 Va. 466, 479, 32 S.E.2d 689, 695 (1945); Byrd v. Stonega Coke & Coal Co., 182 Va. 212, 221, 28 S.E.2d 725, 729 (1943).

As previously discussed, the General Assembly's purpose when enacting Code § 65.2-402(B) was to protect the public servants

enumerated in the statute from the risk of nonpersuasion in claims involving heart disease and hypertension. See Newman, 222 Va. at 541, 281 S.E.2d at 901; Harter, 222 Va. at 567, 281 S.E.2d at 913. Construing Code § 65.2-402(B) so that the enumerated public servants recover benefits when the preponderance of the evidence persuades the commission that their employment was a contributing cause of the heart disease reinforces the General Assembly's desired purpose of protecting this class of claimants from the risk of nonpersuasion by assuring that they are awarded benefits when the evidence presented actually preponderates in their favor.

Finally, we would be exceeding the scope of our judicial function were we to alter the General Assembly's intended application of Code § 65.2-402(B) and hold that the causation presumption can be rebutted when the preponderance of the evidence indicates to the commission that both employment-related and non-work-related factors contributed to the causation of the heart disease. The legislature was making a public policy judgment when it allocated to employers the burden of proof and the ultimate risk of nonpersuasion in these cases. See Newman, 222 Va. at 541, 281 S.E.2d at 901. As an appellate court, we are precluded from judicially inventing a contrary rule, "the merits of which involve public policy judgments which are properly the province of the General Assembly." Bristol Redev. and Hous. Auth. v. Farmbest, Inc., 215 Va. 106, 109, 205 S.E.2d 406, 408

(1974).

For the foregoing reasons, we affirm the commission's conclusion that it had subject matter jurisdiction over claimant's claim and its finding that the communication date of claimant's diagnosis was February 17, 1995.  We vacate the commission's finding that employer failed to rebut the presumption of Code § 65.2-402(B) and remand for further proceedings consistent with this opinion.

<u>Affirmed in part, vacated in part and remanded</u>.

Bumgardner, J., concurring.

I concur in the decision to remand the case for further proceedings in light of Augusta County Sheriff's Dep't v. Overbey, 254 Va. 522, 492 S.E.2d 631 (1997). I do not join the balance of the opinion.

Code § 65.2-402(B) creates a true presumption. A presumption allows the party with the burden of producing evidence of fact A to meet the burden by producing evidence of fact B. The presumption holds that when evidence proves fact B, then fact A, the presumed fact, is established. The proponent of fact A can rest, will survive a motion to strike, and will be entitled to judgment as a matter of law if the opposing party does not present evidence to rebut the presumed fact. The burden of producing evidence shifts to the opponent. If evidence showing the nonexistence of the presumed fact is produced, the presumption is rebutted.

In this case, Michael Tirpak had the burden of producing evidence that his heart disease was caused by his employment. Code § 65.2-402(B) creates a presumption that employment was the cause if the claimant produces evidence specified in Code § 65.2-402(D). Thus, when a claimant presents evidence that he had a pre-employment physical examination and was found to be free of heart disease, then the presumed fact, causation by employment, is taken as proved. The claimant prevails unless the employer presents evidence to refute the presumed fact. If the

employer presents evidence of the nonexistence of the presumed fact, that the heart disease was not caused by employment, the presumption is rebutted.

In Overbey, the employer presented evidence to rebut the presumed fact, causation by employment.  The claimant failed to present evidence that established causation once the benefit of the presumption disappeared.  Overbey had no evidence on the issue of causation, and the employer prevailed as a matter of law because it rebutted the presumption.

In the instant case, the employer presented evidence to rebut the presumed fact.  Under Overbey the presumption was rebutted.  However, the claimant presented other evidence that could establish causation.  He did not rely solely on the presumption as Overbey did.  This case must be remanded for the commission, acting as trier of fact, to evaluate whether the claimant's evidence to prove causation prevails over the employer's evidence to disprove it.

On remand the majority directs the commission to weigh the evidence of both parties to see if the employer presented sufficient evidence to rebut the presumed fact.  I do not believe that is the correct procedure, but in this case it is not necessary to decide the correct practice for handling presumptions.  Overbey establishes that the employer in this case has presented sufficient evidence to rebut the presumption. Because Tirpak, unlike Overbey, has some evidence to prove

causation independent of the presumption, he may prevail if the commission finds that he met the burden of "'establishing by clear and convincing evidence, to a reasonable medical certainty,' that his heart disease arose out of and in the course of his employment." Overbey, 254 Va. at 527, 492 S.E.2d at 634 (quoting Code § 65.2-401).

I would remand to the commission for it to evaluate the evidence from both sides to see if the claimant has met this burden. The issue of whether the burden of persuasion shifts to the employer should not be addressed at this time. It did not arise as the case was presented to the commission. The issue was never raised, briefed or argued.